# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| WHATCOM EDUCATIONAL CREDIT UNION, | No. 87646-5-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| CHESTER SIMMONS, a/k/a CHESTER B. SIMMONS III and the unknown spouse or domestic partner of CHESTER SIMMONS, a/k/a CHESTER SIMMONS III, individually, and the marital community composed thereof, | |
| Respondents. | |

BIRK, J. — We are asked whether the evidence presented by Chester Simmons to the superior court was sufficient to show improper service of process to support its order to vacate a judgment against him. Applying the substantial evidence standard of review, we answer yes, and affirm.

I

In April 2016, Chester Simmons executed a retail installment sale contract with a seller, which assigned its interest in the contract to Whatcom Educational Credit Union (WECU), to finance $78,182.25 for the purchase of a vehicle. A registered process server signed a declaration of service attesting that she personally served Simmons with a summons and complaint on March 8, 2020, at 37537 32nd Place S., Auburn, WA. In June 2020, WECU filed the summons and

complaint, alleging that Simmons had defaulted on his payments in August 2019, WECU had repossessed the vehicle in September 2019, and WECU had sold it in November 2019. WECU alleged that it had notified Simmons of the $24,588.56 deficiency balance and, as of the filing of the complaint, Simmons had not paid the balance. WECU sought a money judgment for the deficiency balance, prejudgment interest, late charges, and attorney fees.

Together with its summons and complaint, WECU filed a motion and declaration for order of default and default judgment alleging that Simmons had been served and had failed to appear or answer to the complaint. WECU sought a default judgment against Simmons for $26,818.22. The superior court granted WECU's motion and entered an order of default and default judgment on June 26, 2020.

In August 2024, WECU filed an application for writ of garnishment, naming University of Oregon as Simmons's employer, seeking to satisfy the default judgment. On September 19, 2024, University of Oregon answered the writ of garnishment, acknowledging that Simmons was an employee.

On September 24, 2024, Simmons filed a pro se motion to vacate the default judgment. After correcting noncompliant formatting in his motion, Simmons refiled the motion in December 2024. He asserted that the June 2020 default judgment should be vacated under CR 60(b), "on the grounds of improper service, lack of notice, and violation of due process rights." To support his motion, he attached his own affidavit. In it he claimed he had "no knowledge" of the lawsuit until August 2024, stated that he was "estranged from [his] spouse" and "not

2

resid[ing]" at 37537 32nd Place S. on March 8, 2020, the alleged date that process was served, and asserted that the "physical description provided by the process server" did "not match [his] actual appearance." He stated that he was six feet, five inches, and weighed approximately 225 pounds, whereas the process server's declaration described him as being 5 feet, 10 inches, and weighing 180 pounds. To support his motion, he attached a photograph of his Oregon driver's license, which listed his height as 6 feet, 6 inches and his weight as 216 pounds.

In response to Simmons's motion, WECU filed exhibits purporting to show that 37537 32nd Place S. was Simmons's residence on the alleged date of service, including a statutory warranty deed, petition for divorce, in which Simmons's wrote that he and his wife "began living in separate households on June 15, 2023," three years after the alleged service of process, and the original retail installment sale contract that listed Simmons's address as 37537 32nd Place S.

At the hearing on Simmons's motion to vacate the superior court heard Simmons's testimony that he was "6'6["], 215," that he moved out of his marital home in June 2023, and that in 2020 he was residing there "[o]n and off." When the court asked him, "[D]o you have any explanation as to why a [gentleman] would have answered and said that he was you and was in the home in June of 2020," Simmons replied, "I have no idea. But, you know, my personal issues, it stems back from that far away, 2020, so, you know, I wasn't there at the time."

The superior court granted Simmons's motion to vacate the 2020 default judgment and 2024 judgment on answer and order to pay. In its oral ruling, the superior court stated, "[T]here's no mistaking those two height differences." The

superior court also told the parties "that case law really actually is in favor of things being resolved on the merits of the case and not by defaults," and "that there has been a substantial amount of time since the time of service and the time of collection." In its written order, the court found that WECU had failed to properly serve Simmons. WECU timely appealed.

II

WECU argues that after it presented prima facie evidence of proper service of process the burden shifted to Simmons to demonstrate by clear and convincing evidence that service was improper—a showing that it says Simmons failed to meet. We disagree. The superior court found factually that Simmons was not served process—a finding supported by substantial evidence. Buttressed by that finding, Simmons met his burden to show by clear and convincing evidence that service of process was improper. The superior court did not err in granting Simmons's motion to vacate.

A

Simmons filed a pro se CR 60(b) motion, but he did not specify which subsection of the rule he sought relief under, nor did the superior court identify one. WECU argues that the only basis for relief would have been under CR 60(b)(5). We agree.

Relief under CR 60(b)(1) was time barred because Simmons's motion was filed more than one year after the entry of judgment and no extraordinary circumstances were cited to invoke CR 60(b)(11). See Shandola v. Henry, 198 Wn. App. 889, 895, 396 P.3d 395 (2017). CR 60(b)(11) is a "catch-all provision

4

intended to serve the ends of justice in extreme, unexpected situations and when no other subsection of CR 60(b) applies." CR 60(b)(5) provides a valid basis to vacate the judgment against Simmons because a judgment entered without service of process is void for lack of personal jurisdiction. See Allstate Ins. Co. v. Khani, 75 Wn. App. 317, 324, 877 P.2d 724 (1994) (Proper service is essential to invoke personal jurisdiction and a default judgment entered without personal jurisdiction is void.).

B

Simmons presented little more than his own word that he was not served process on March 8, 2020, but given the inaccurate physical description by the process server, and the lack of corroborating evidence, the superior court properly decided the fact issue of whether Simmons was actually served, and this factual determination is sufficient to support the conclusion that service of process on Simmons was ineffective.

"Generally, a decision to grant or deny a motion to vacate a default judgment is within the sound discretion of the trial court. The decision will not be disturbed on appeal unless the trial court abused its discretion." Leen v. Demopolis, 62 Wn. App. 473, 478, 815 P.2d 269 (1991) (citation omitted). Proper service of a summons and complaint is essential to invoke personal jurisdiction over a defendant. Scanlan v. Townsend, 181 Wn.2d 838, 847, 336 P.3d 1155 (2014). Courts have a "nondiscretionary duty to vacate void judgments." Leen, 62 Wn. App. at 478. We review de novo whether service of process was proper. Scanlan, 181 Wn.2d at 847. When the sufficiency of service of process is

challenged, the plaintiff must make a prima facie showing of sufficient service, "such as by producing a declaration of service that shows service was properly carried out." Spencer v. Franklin Hills Health-Spokane, LLC, 3 Wn.3d 165, 173, 548 P.3d 193 (2024). "The burden then shifts to the party challenging the service of process to 'demonstrate by clear and convincing evidence that service was improper.' " Id. (quoting Scanlan, 181 Wn.2d at 847).

"When a motion to set aside a default judgment is supported by affidavits asserting lack of personal service, and the plaintiff files controverting affidavits, a triable issue of fact is presented." Woodruff v. Spence, 76 Wn. App. 207, 210, 883 P.2d 936 (1994). "Affidavits sworn to by individuals purportedly served asserting that they were not in fact personally served are considered by the courts as competent evidence discrediting averments to the contrary in affidavits of service." Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 176, 744 P.2d 1032, 750 P.2d 254 (1987). At its discretion, the court "may direct that an issue raised by motion be heard on oral testimony if that is necessary for a just determination." Woodruff, 76 Wn. App. at 210. "A court may abuse its discretion by failing to hold an evidentiary hearing when affidavits present an issue of fact whose resolution requires a determination of witness credibility." Id. However, a party's failure to "request to present live testimony" or to "timely object to the trial court deciding the issue upon affidavits" may constitute waiver of those issues. See Leen, 62 Wn. App. at 478-79.

6

We review a trial court's findings of fact for substantial evidence, "defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true." Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). We do not review credibility determinations on appeal. Columbia State Bank v. Invicta L. Grp. PLLC, 199 Wn. App. 306, 319, 402 P.3d 330 (2017). We do not substitute our judgment for that of the trial court even if we might resolve the factual dispute differently. Sunnyside Valley Irrig. Dist., 149 Wn.2d at 879-80.

Under RCW 4.28.080(14), one way to effect service is by delivery of the summons "to the defendant personally." WECU made a prima facie showing of sufficient service by presenting a facially valid declaration of service, stating Simmons was served personally, signed under penalty of perjury. The burden then shifted to Simmons to demonstrate by clear and convincing evidence that service was improper. As evidence, Simmons submitted an affidavit in which he swore that he was estranged from his spouse at the time of service and did not reside at the address, that his physical description did not match the process server's description of him—he was 6 feet, 5 inches tall and weighed 225 pounds, 7 inches taller and 45 pounds heavier than the process server described him—and that he had no knowledge of the lawsuit until four years after he was allegedly served process. He corroborated his affidavit with a picture of his Oregon driver's license and his oral testimony before the court at the motion hearing. In addition to the declaration of service, WECU disputed Simmons's claim of improper service

7

with evidence purportedly showing that Simmons resided at 37537 32nd Place S. until 2023, three years after it allegedly served him in March 2020.

The superior court considered the documentary evidence, questioned Simmons directly, and provided WECU with the opportunity to question Simmons. The superior court made a factual finding, based on the inconsistency between Simmons's height, weight, and the process server's physical description of him, and Simmons's claimed marital issues, that Simmons had not been served. The superior court found Simmons's testimony credible, a determination that we do not revisit. WECU could have requested an evidentiary hearing to put on additional evidence to refute Simmons's testimony, but it never requested such a hearing, nor does it assert on appeal that the superior court erred by not ordering one. See Northwick v. Long, 192 Wn. App. 256, 267, 364 P.3d 1067 (2015) ("trial court could have held evidentiary hearing with live testimony" but it "had discretion not to do so"); Leen, 62 Wn. App. at 478-79 (failure to request an evidentiary hearing waived the issue).

The superior court's factual finding that WECU failed to serve Simmons in March 2020 is supported by substantial evidence. A rational person could find, based on the inconsistent physical descriptions and evidence of Simmons's marital troubles, that he was not present at 37537 32nd Place S. at the time of service, and therefore, that Simmons was never served. The superior court's factual findings are sufficient to satisfy the clear and convincing standard of evidence that

service of process was improper.[1]  Because there is a nondiscretionary duty to vacate void judgments, with the conclusion that Simmons was never served, the superior court did not err by vacating the default judgment against Simmons.[2]

---

[1] Though the superior court never acknowledged that Simmons's burden of proof to defeat the facially valid affidavit of service was clear and convincing evidence, this is not sufficient to show that the superior court failed to apply the correct standard.  See In re Welfare of Harbert, 85 Wn.2d 719, 538 P.2d 1212 (1975) ("In Washington, a trial judge is presumed to know the rules of evidence and is presumed to have considered only the evidence properly before the court, and for proper purposes."); Douglas Nw., Inc. v. Bill O'Brien & Sons Constr., Inc., 64 Wn. App. 661, 681-82 828 P.2d 565 (1992) ("the trial court is presumed to know the law," and the absence of specific findings is not the equivalent of a negative finding on an issue).

[2] Most cases have involved a more robust quantum of evidence to overcome a facially valid affidavit of service.  See Larson v. Zabroski, 21 Wn.2d 572, 575, 152 P.2d 154 (1944), adhered to on recons.., 21 Wn.2d 572, 155 P.2d 284 (1945) ("Appellant's affidavit is a self-serving declaration unsupported by any evidence of other facts which would excuse appellant's disregard of the service."); Leen, 62 Wn. App. at 479-80 (appellant's declaration and certificate from "two persons who claimed to have been with [him]" at the time he was served was not clear and convincing evidence of improper service); Randall v. Bushnell, No. 81177-1-I, slip op. at 3, 5-6 (Wash. Ct. App. Apr. 19, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/811771.pdf (defendant's affidavit disputing the description of his age, weight, and hair color described in the service affidavit, coupled with flight itineraries, was not clear and convincing evidence of improper service); Evans v. Firl, No. 38364-4-III, slip op. (unpublished portion) at 33 (Wash. Ct. App. Jan. 31, 2023) (The court's ability to observe Firl was substantial evidence to support the finding that he could be mistaken for a different age.), https://www.courts.wa.gov/opinions/pdf/383644_pub.pdf.

In other circumstances, trial courts have abused their discretion by ruling on competing affidavits without holding an evidentiary hearing or taking live testimony. See Woodruff, 76 Wn. App. at 210 (trial court abused its discretion by not holding evidentiary hearing where declaration from appellant, corroborated by affidavits from two others, that appellant was not at the place described in the service affidavit presented contested issue of fact).

But in some circumstances, as here, the trial court ruled, without an evidentiary hearing, that there was clear and convincing evidence to find that service of process was insufficient.  See Lee v. W. Processing Co., Inc., 35 Wn. App. 466, 468-69, 667 P.2d 638 (1983) ("The record establishes that the only three individuals who could have received service of the summons and complaint filed affidavits asserting they were not personally served.  The trial judge could find these affidavits persuasive," especially when an earlier proactive response to a

9

C

WECU argues that the superior court erred by citing case law's preference to resolve cases on the merits, rather than by default judgments, and by citing WECU's four year wait to collect on the default judgment. WECU is correct that neither of those bases can support a motion to vacate for lack of personal service. Disregarding these as providing any support for the superior court's order to vacate, the order is still sufficiently supported by the court's factual finding that Simmons was not actually served process.

Under CR 60(b), there is a general policy favoring controversies to be determined on the merits rather than by default. Little v. King, 160 Wn.2d 696, 703, 161 P.3d 345 (2007). The court considers the CR 60(b) motion as a matter of equity, id. at 703-04, but in a situation, such as Simmons's, where he was never served process, there is no balancing of equities because the court has a nondiscretionary obligation to vacate a default judgment that was entered without personal jurisdiction. Khani, 75 Wn. App. at 325 n.5, 326-27.

Under RCW 6.17.020(1), a "party in whose favor a judgment of a court has been or may be filed or rendered" may "have an execution, garnishment, or other legal process issued for the collection or enforcement of the judgment at any time within 10 years from entry of judgment or the filing of the judgment in this state." WECU sought collection less than five years after the entry of default judgment. It was clearly within the 10 year period allowed by statute to collect on its default

---

demand letter could support the inference that proper service would have yielded a similarly proactive response.).

judgment against Simmons. Neither the general policy favoring resolution on the merits, nor the length of time that WECU waited before it sought to collect are relevant to the superior court's order granting Simmons's CR 60(b) motion.

III

Both parties request appellate costs and attorney fees. Under RAP 14.2, the substantially prevailing party is awarded costs. Under RAP 18.1, a party may recover reasonable attorney fees if allowed under applicable law. RCW 4.84.330 directs that

> [i]n any action on a contract or lease . . . where such contract or lease specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he or she is the party specified in the contract or lease or not, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements.

A contractual attorney fee provision favoring one party is interpreted to be bilateral. See Labriola v. Pollard Grp., Inc., 152 Wn.2d 828, 839, 100 P.3d 791 (2004) (contractual attorney fee provision in favor of employer supported award of attorney fees to employee as prevailing party). Under the statute, "prevailing party" is defined as the party "in whose favor final judgment is rendered." RCW 4.84.330. "In general, a prevailing party is one who receives an affirmative judgment in his or her favor." Riss v. Angel, 131 Wn.2d 612, 633, 934 P.2d 669 (1997).

The retail installment sale contract, section 3(c) states, "You may have to pay collection costs. If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's reasonable fee and court costs as the law allows." Because we affirm the superior court's order vacating the

11

default judgment, Simmons is the prevailing party. We award costs and reasonable attorney fees to Simmons.

Affirmed.

_____
Birk, J.

WE CONCUR:

_____     _____, ACJ